IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHIRLEY MILLER,                    )
                                   )
         Plaintiff,                )
                                   )
                                   )
                                   )
     v.                            ) No. 18 C 5373
                                   )
                                   )
MEGAN J. BRENNAN, Postmaster       )
General of the United States       )
Postal Service.                    )
                                   )
         Defendants.               )

Memorandum Opinion and Order

Plaintiff Shirley Miller has been an employee of the Postal Service for over forty years. In 2004, she suffered a work injury that required surgery and physical therapy. She returned to work in 2005 with physical restrictions that her employer accommodated for over a decade. But in September of 2015, plaintiff was forced to take leave after a series of medical forms she submitted to her employer gave vastly different accounts of the restrictions her condition necessitated. The confusion was sorted out by mid-November, and plaintiff returned to her previous modified position as a mail processing clerk on November 23, 2015. Plaintiff was

paid for all but a day or two of the time she was on leave.[1] She then filed this lawsuit claiming that her employer failed to accommodate her disability during the time she was on leave and that it retaliated against her for engaging in protected activity.[2] Because the record does not support either claim, summary judgment in the Postal Service's favor is appropriate.

Nearly all of the facts are undisputed. Beginning in January of 2009, plaintiff worked as a mail processing clerk in the Transportation Department, where her job duties were modified to accommodate her physical restrictions. She worked in that position without incident until around May of 2015, when she, along with all other employees at her facility who had modified job assignments, were asked to fill out updated "CA-17 Forms"[3] to

---

[1] At oral argument, plaintiff's attorney stated that her damages would amount to "at least the couple months that she was out of service," which he estimated to be on the order of six to eight thousand dollars. Transcript of 02/24/2020 hearing at 1:14-15, 1:19 (RD). But plaintiff testified that she was paid for all but a couple of days of her leave and admitted as much in response to defendant's factual statement. *See* Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 36.

[2] Although the amended complaint captions the first of these claims, "REHABILITATION ACT/ADA DISCRIMINATION FAILURE TO ACCOMMODATE," the only theory plaintiff advances in response to defendant's motion is that defendant failed to accommodate her disability. To the extent the complaint may be construed as asserting a claim that defendant discriminated against her by taking an adverse action motivated by her disability, she has forfeited that claim by failing to respond to defendant's argument that it lacks prima facie evidentiary support.

[3] A CA-17 Form is "a Department of Labor document that contains

2

determine whether their modifications remained appropriate. Plaintiff was surprised at the request, as she had not been asked to provide updated medical documentation in the six years of her modified mail processing clerk position. Plaintiff told William Pouncy, the Leave Control Manager at her facility, that she was a "permanent rehab employee," meaning that her modifications were permanent as no change in her status was expected. But Pouncy told her to submit an updated CA-17 Form anyway and said she could find one online. Prior to these events, on May 6, 2015, plaintiff sent an email to the Postmaster General complaining that the Postal Service was forcing older employees to retire.[4]

On June 9, 2015, plaintiff provided a CA-17 Form completed and signed by her doctor based on a medical examination conducted on May 27, 2015. That form ("Version 1") stated that plaintiff had no physical restrictions, could lift 15-40 pounds per day, and could perform all tasks either continuously or intermittently for 8 hours a day. Based on that information, the Postal Service sent

---

information as to an employee's ability to return to work." Def. L.R. 56.1 Stmt. ¶ 17.

[4] Also prior to these events, in January and November of 2014, plaintiff filed EEO complaints regarding a driver who assaulted her. Plaintiff asserts these facts in her L.R. 56.1 Statement, but she does not expand upon them in any way that might reasonably suggest that the actions she complains about were taken in retaliation for these EEO complaints. Accordingly, even assuming that the complaints qualify as protected activity, they have no apparent relevance to her claims.

plaintiff a letter informing her that she was to return "full duty" to her position as a Mail Processing Clerk effective September 5, 2015. Plaintiff realized at that point that the information her doctor had provided in Version 1 was mistaken, so she provided a second CA-17 Form on September 3, 2015 ("Version 2"). Version 2 was based on the same May 27, 2015, medical examination, but it identified a number of significant restrictions, including that plaintiff could only intermittently lift 5-10 pounds and that she could not pull or push, engage in simple grasping, perform "fine manipulation (includes keyboarding)," reach above her shoulder, drive a vehicle, or operate machinery. Based on the restrictions stated in Version 2, the Postal Service determined that plaintiff was unable to perform any work for which she was qualified, including the modified position she had held since 2009. Accordingly, Pouncy sent plaintiff home and told her that until the Postal Service understood the nature of her restrictions, she would not be permitted to work.

Over the next several weeks, plaintiff provided a succession of revised CA-17 Forms. In Version 3, which she submitted on September 14, 2015, the "simple grasping" restriction was crossed out. In Version 4, submitted two days later, the "fine manipulation" restriction was also crossed out. Version 5, submitted on September 21, was a clean version that incorporated

the cross-outs of Versions 3 and 4. All of these versions were based on the original examination date of May 27, 2015, and were initialed by plaintiff's doctor.

After receiving these forms, Pouncy told plaintiff that he could not give her a modified work assignment until she provided an unedited, signed CA-17 Form based on an updated medical examination. On October 23, 2015, a Postal Service nurse sent a letter to plaintiff's doctor seeking clarification of her status and providing a blank CA-17 Form for the doctor to complete. Plaintiff returned a sixth and final CA-17 Form on November 18, 2015. This version included a new examination date, did not include any handwritten edits, and stated that plaintiff could intermittently lift 15-40 pounds, continuously stand and walk, intermittently bend and pull, intermittently perform fine manipulation and simple grasping, continuously operate machinery, and reach above her shoulder. On November 23, 2015, the Postal Service extended plaintiff an Offer of Modified Assignment as a Modified Mail Processing Clerk, which plaintiff accepted.

The foregoing facts are undisputed. Where the parties' views diverge is on the question of whether the modified position plaintiff occupied as of early 2015 was a "limited duty assignment," which the Postal Service Handbook ("Handbook") and Employment and Labor Relations Manual ("ELM") describe as "a

5

temporary accommodation" that is provided "during the recovery process when the effects of the injury are considered temporary," and which requires the employee to provide periodic updates regarding her condition, or instead a "rehabilitation assignment," which provides "permanent modified positions" "when the effects of an injury are considered permanent or when the employee has reached maximum medical improvement," and which does not require ongoing medical substantiation. *See* Pl.'s L.R. 56.1 Stmt., Exh. 3 (Handbook) and Def.'s L.R. 56.1 Stmt., Exh. 27 (ELM). Because there is some evidence supporting each party's view, the issue is genuinely in dispute. Nevertheless, summary judgment is appropriate because the dispute, while genuine, is not material to the outcome of the case. *See Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) ("[a] 'material fact' is one identified by the substantive law as affecting the outcome of the suit.")(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Even assuming that plaintiff was not required by the terms of the Handbook or the ELM to submit updated medical information to maintain her modified job assignment, Pouncy's insistence that she provide a recent, accurate, and unedited CA-17 Form as part of a facility-wide initiative cannot reasonably be construed as an unwillingness to accommodate her disability. Pouncy testified that

plaintiff held a "limited duty, modified-job assignment" and explained that the reason her position was not considered permanent was that "[n]o paperwork was submitted for her to be in the injury comp department." Pouncy Dep., Def.'s L.R. 56.1 Stmt. Exh. 2 at 11, 14. Although plaintiff disputes that her modified position was temporary, even she sometimes referred to it as a "limited duty" assignment, *see*, e.g., Miller Dep., Pl.'s L.R. 56.1 Stmt., Exh. 1 at 117-121; 207:22-23 ("Giving me the [2008] job offer was a modified job offer for limited and light duty"), and she does not controvert Pouncy's explanation for why her modifications were not considered permanent. At all events, even if Pouncy was wrong about plaintiff's status or the need for her to update her medical record to maintain her modifications, the only evidence plaintiff identifies to suggest that his view was anything other than an innocent mistake is the fact that his request came on the heels of plaintiff's email to the Postmaster General complaining about age discrimination.

It is here that plaintiff's failure-to-accommodate claim dovetails with her retaliation claim. Plaintiff's central theory is that Pouncy required her to submit updated medical information, then used the information she provided to prohibit her from working in any position that accommodated her disability, all in

retaliation for her email to the Postmaster General.[5] But plaintiff admits that she was not singled out to provide updated CA0-17 Forms; that the forms she provided contained irreconcilable accounts of her condition; and that at least one of the versions she provided facially prevented her from working in any capacity. Even if these facts are not fatal to plaintiff's claims, the argument she spins from them is untenable. Plaintiff argues that the Postal Service should have ignored the salmagundi of conflicting information she provided in her CA-17 Forms as the obviously mistaken product of her confusion and should have acted more quickly to get to the bottom of her condition. But if that theory finds any support in the case law, plaintiff has not pointed to it. Particularly suspect is plaintiff's suggestion that her employer should or even *could* have ignored the substantial restrictions her doctor enumerated in Version 2, which she admits rendered her unable to perform any job for which she was qualified.

---

[5] Plaintiff also argues that her supervisors retaliated against her by revoking her email privileges after she emailed the Postmaster General to complain about age discrimination. But plaintiff must show that the email restriction was "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Boss v. Castro*, 816 F.3d 910, 918-19 (7th Cir. 2016). She has not done so, offering only the barebones statements that her job required her to communicate with other employees by email and that "it became difficult to do [her] job" after her email privileges were revoked. *See* Miller Decl., Pl.'s L.R. 56.1 Stmt., Exh. 1 at ¶ 18.

When the record is viewed as a whole, the only reasonable inference is that Pouncy appropriately—or, at worst, mistakenly—asked plaintiff to submit updated evidence of her medical condition to ensure that her years-old job modifications remained appropriate, then discharged the Postal Service's obligation to engage in an interactive process to identify and implement appropriate accommodations. The fact that the Postal Service offered plaintiff a modified position—which she accepted—just days after receiving the only unedited, signed version of the CA-17 Form that accurately described her physical limitations demonstrates that the process was successful. Summary judgment on plaintiff's failure to accommodate claim is appropriate. *See Bunn*, 753 F.3d at 683 (affirming summary judgment based on undisputed evidence that employer provided reasonable accommodation).[6] And because the record does not suggest either that plaintiff suffered a materially adverse action as a consequence of her email to the Postmaster General, or that there was any causal link between that email and the remaining conduct she complains about, summary judgment on her retaliation claim is warranted as well. *See Boss* 816 F.3d at 918 ("[a] causal link requires more than the mere fact

---

[6] That the Postal Service denied plaintiff's handwritten note requesting a "light duty" assignment does not change the analysis, as the note came at a time when plaintiff's ability to perform *any* work was uncertain and contained nothing to clarify her medical condition.

that an employer's action happens after an employee's protected activity.").

**ENTER ORDER:**

*Elaine E. Bucklo* (signature)
**Elaine E. Bucklo**
United States District Judge

Dated: March 16, 2020